UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Anissa Stewart,

     Plaintiff,

                              Case No. 16-10434

v.

                              Hon. Sean F. Cox

Michigan Pontiac, LLC, et. al.,

     Defendants.

_____/

## OPINION & ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND DENYING PLAINTIFF'S REQUEST FOR SPOILATION SANCTIONS

This action arises out of a fire that occurred in Plaintiff Anissa Stewart's ("Plaintiff") apartment.  Plaintiff alleges the following counts against Defendants: negligence, negligence *per se*, *res ipsa loquitur*, gross negligence, breach of lease agreement and intentional infliction of emotional distress.  Plaintiff seeks to hold Defendants liable for damages incurred to her personal property as a result of the fire. Plaintiff also seeks damages for emotional distress.

Currently before the Court is Defendants' Motion for Summary Judgment. Plaintiff has filed a response opposing Defendants' motion.  Plaintiff's response also seeks spoilation sanctions.  The Court heard oral argument as to Defendants' motion on February 9, 2017.  For the reasons that follow, the Court shall **GRANT** Defendants' Motion for Summary Judgment and **DENY** Plaintiff's request for spoilation sanctions.

## BACKGROUND

**A.**     **Factual Background**

The facts of this case are relatively straight forward.  Consistent with this Court's

Practice Guidelines, Defendants have filed a statement of material facts not in dispute (Doc. #24, Def.s' Stmt.) and Plaintiff has filed a counter-statement of disputed facts (Doc. #29, Pl.'s Stmt.). Below is an overview of the facts, taken in a light most favorable to Plaintiff, the non-moving party.

Plaintiff brings this action against Defendants Michigan Pontiac, LLC and Aspen Square Management, LLC (collectively, "Defendants"). Defendant Michigan Pontiac is the owner of an apartment complex facility located in Pontiac, Michigan. (Def.'s Stmt. at ¶ 1; Pl.'s Stmt. at ¶ 1). Defendant Aspen Square Management is an affiliated entity which manages the apartment complex pursuant to a Seville Pointe Apartments LP Lease Agreement. (Def.'s Stmt. at ¶ 2; Pl.'s Stmt. at ¶ 2).

Plaintiff has resided at the facility for the last several years and last entered into a Lease with Defendants' predecessor, Seville Pointe Limited Partnership. (Def.'s Stmt. at ¶ 3; Pl.'s Stmt. at ¶ 3). The Lease Agreement covered the period of June 6, 2012 through June 30, 2013. (*Id.*). The lease was assigned to Defendant Michigan Pontiac as part of its purchase of the facility on March 22, 2013. (Def.'s Stmt. at ¶ 4; Pl.'s Stmt. at ¶ 4).

On October 27, 2013, a fire occurred in the bathroom of Plaintiff's apartment. (Def.'s Stmt. at ¶ 6; Pl.'s Stmt. at ¶ 6). Plaintiff was not home when the fire started. (Ex. B to Pl.'s Stmt. at 27). When Plaintiff got home, she entered her apartment and noticed heavy, dark smoke. (*Id.* at 25). Her smoke detectors were not sounding. (*Id.* at 28).

The Waterford Regional Fire Department was called to the scene. (Ex. D to Pl.'s Stmt., Fire Dep't Incident Report). The Fire Department noted that the fire originated in Plaintiff's bathroom. (*Id.*). An origin and cause investigation was subsequently requested. The

2

investigation was conducted by Carl J. Wallace of the Waterford Regional Fire Department. (*Id*.). Wallace composed an Origin and Cause Investigation Report detailing his findings. (Ex. A to Pl.'s Stmt., Origin & Cause Investigation Report). The Origin & Cause Report concluded that:

> The area of origin is at or above ceiling level in the bathroom approximately in the center, the area of the ceiling vent fan. At this time it is this investigator's opinion that the fire is **undetermined in nature** and wiring and/or the ceiling vent fan cannot be ruled out as the cause of the fire. Should any new evidence become available regarding this investigation I reserve the right to evaluate that evidence and change this opinion accordingly.

(*Id*. at 3) (emphasis in original).

### Plaintiff's Complaints Regarding Bathroom Ceiling Fan

The parties dispute whether or not Plaintiff had previously reported any issues with respect to her bathroom ceiling fan. Defendants' position is that Plaintiff had never previously launched any complaints. As evidence of this, Defendants point to Aspen Square Management's service requests report. (Ex. E. To Def.'s Br.). The report indicates that Plaintiff made six total service requests between June 2013 and November 2013, none of which pertained to the bathroom ceiling fan.

Plaintiff offers her own testimony in support of the fact that she had launched several complaints regarding the bathroom ceiling fan. Plaintiff testified that she had not experienced issues with maintenance until she got the "bathroom blower." (Ex. B. to Pl.'s Stmt. at 19). Plaintiff used the fan in her bathroom frequently and noticed that it started getting "extremely loud." (*Id*.). Plaintiff also noticed that when she would turn on the switch for the fan, the fan would not always turn on. (*Id*. at 20). Plaintiff recalls leaving a message regarding the fan "going out" around the same time that she had also filed a report requesting bed bug

3

extermination. (*Id*.). According to Plaintiff, no one came to repair the fan, but someone came regarding extermination. (*Id*.). Sometime thereafter, Plaintiff noticed that the fan was hanging down from the ceiling. (*Id*.) Plaintiff called regarding the fan and Plaintiff believes the fan was subsequently re-affixed to the ceiling by someone from maintenance. (*Id*.).

Several days prior to the fire, Plaintiff testified that she went to the management office to complain that the fan had been making loud noises. (*Id*. at 21-22). Plaintiff was told that someone would be sent over to Plaintiff's apartment. (*Id*. at 21). According to Plaintiff, no one was sent. Plaintiff also recalled experiencing issues with the fan (*i.e.*, loud noises and turning off) on the morning of the fire. (*Id*.).

### Events That Transpired After The Fire

Approximately one month after the fire, Plaintiff retained counsel in this matter. Thereafter, Defendants notified Plaintiff's counsel that it was necessary for Plaintiff to remove her personal property and vacate the unit in order to allow Defendants to make necessary reparations to the apartment and get it re-leased. (Def.s' Stmt. at ¶ 10; Pl.'s Stmt. at ¶ 10). Communications between Defendant Aspen Square Management and Plaintiff's counsel were ongoing thereafter. These communications primarily concerned Plaintiff's access to the premises after the fire, the restoration of Plaintiff's personal property and the replacement cost of Plaintiff's damaged property.

On December 13, 2013, Plaintiff's counsel sent Defendants an email reflecting a telephone conversation between the parties that took place on that date. (Doc. # 34). In the email, Plaintiff's counsel noted that Plaintiff had returned to the damaged unit on December 10, 2013 to collect salvageable personal property. The email also stated that several of Plaintiff's

4

personal items had been removed by Defendants at some point after locks on the unit were changed. The email concluded that Plaintiff finished removing her salvageable property, and that the "remaining items are available for [Defendants] to inspect, and the unit can now be restored."

On January 21, 2014, Defendants notified Plaintiff's counsel that it had comprised a list of Plaintiff's personal property that it felt could be cleaned and/or restored to original condition. (Ex. G to Pl.'s Stmt.). Defendants asked Plaintiff's counsel to advise by January 22, 2014 which items Plaintiff would like to have cleaned.

On February 10, 2014, Defendants notified Plaintiff's counsel that all efforts to locate a cleaning company had ceased because they had not received a response from Plaintiff regarding her intention to attend to her abandoned property. (Ex. G to Pl.'s Stmt.). To the extent that Plaintiff intended to retrieve any of the property, which was "abandoned when vacating the unit," Plaintiff had until February 14, 2014 at 5 p.m.

On February 17, 2014, Plaintiff's counsel sent an email to defendants stating that she had briefly reviewed Defendants' email and would provide a detailed response at a later time. (Ex. I to Pl.'s Stmt.). Counsel also stated that: "the most important issue to address is your statement that the condition of the unit is no longer the same as it was after October 27, 2013 fire. Please refrain from any further spoilation of evidence and provide an explanation as to what has been changed in the damaged unit." (*Id*.).

On February 24, 2014, Plaintiff's counsel sent an email detailing certain discussions that had taken place between Defendants and counsel. (Ex. H to Pl.'s Stmt.). The email stated that the parties had agreed that Plaintiff would have until February 19, 2014 to remove her personal

5

property from the damaged unit.  Plaintiff went to the damaged unit to remove her items on February 17, 2014, but was denied access because the items were already being removed into portable storage containers.  The email also indicates that Defendants had a telephone conversation with another attorney ("Joe") from counsel's firm.  During that conversation, Joe permitted Defendants to finish moving the remainder of the items into containers. The email stated that during the conversation between Defendants and Joe, "it became clear that there was no dispute as to the cause of the fire in the unit, and that [Defendants are] responsible for [Plaintiff's] damaged personal property, as a result, the only issue remaining is the extent of damage."  Plaintiff's counsel concluded that Plaintiff no longer wished to have her property cleaned and requested the actual cash value of Plaintiff's personal property ($64,835.82).

On February 27, 2014, Plaintiff's counsel sent an email to Defendants summarizing a telephone conversation between the parties that occurred on that date.  (Ex. H to Pl.'s Stmt.).  The email discussed, among other things, Defendants' concern that the contents list provided by Michigan Fire Claims was not consistent with Defendants' contents list.  The email also summarized the parties' positions as to the accurate replacement cost for damaged personal property.

On June 26, 2014, Defendants notified Plaintiff's counsel that Plaintiff was to remove her personal property, which had been stored in a portable storage container on Defendants' premises, on or before July 25, 2014.  (Def.s' Stmt. at ¶ 11; Pl.'s Stmt. at ¶ 11).

On July 22, 2014, Plaintiff's counsel sent a letter to Defendants acknowledging that Plaintiff would be attending to her property by July 25, 2014.  (Def.s' Stmt. at ¶ 12; Pl.'s Stmt. at ¶ 12).  Despite this, Plaintiff did not attend to her property by the specified date.  (Def.s' Stmt. at

¶ 13; Pl.'s Stmt. at ¶ 13).

**B.    Procedural Background**

Plaintiff filed this action on February 8, 2016.  Plaintiff's Amended Complaint, filed on

March 14, 2016, is the operative complaint in this case.  (Doc. # 10, Pl.'s Compl.).  Plaintiff's

complaint names Michigan Pontiac, LLC (a.k.a. The Crossing at Auburn Hills) and Aspen

Square Management, Inc. as defendants in this case.  Plaintiff asserts the following six claims

against Defendants: Count I – Negligence Per Se; Count II – Gross Negligence; Count III –

Negligence; Count IV – Res Ipsa Loquitur; Count V – Breach of Lease Agreement; and Count

VI – Intentional Infliction of Emotional Distress.  Plaintiff seeks monetary relief for the personal

property damaged as a result of the fire and for emotional distress.

On November 17, 2016, Defendants filed the instant motion for summary judgment.

(Doc. # 23, Def.s' Br.).  Defendants seek dismissal of each of Plaintiff's claims on a number of

grounds.  Plaintiff opposes the motion.  (Doc. # 28, Pl.'s Resp.).  Defendants have filed a reply.

(Doc. # 32, Def.s' Reply).

**STANDARD**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1984), quoting FED. R. CIV. P. 56(C).

The party that moves for summary judgment has the burden of showing that there are no

genuine issues of material fact in the case.  *LaPointe v. United Autoworkers Local 600*, 8 F.3d

7

376, 378 (6th Cir. 1993).  The moving party may meet its burden by showing that the nonmoving

party lacks evidence to support an essential element of its case.  *Barnhart v. Pickrel, Schaeffer &*

*Ebeling Co*., 12 F.3d 1382, 1389 (6th Cir. 1993).  In response, the nonmoving party must come

forth with more than a "mere scintilla of evidence" in support of his or her position in order to

survive summary judgment.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (1986).  "In

fact, '[t]he failure to present any evidence to counter a well-supported motion for summary

judgment alone is grounds for granting the motion.'"  *Alexander v. CareSource*, 576 F.3d 551,

558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).

The court must view the evidence, all facts, and any inferences that may permissibly be

drawn from the facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

Defendant seeks summary judgment in its favor as to Plaintiff's claims for negligence,

negligence *per se*, gross negligence, *res ipsa loquitur*, breach of lease agreement and intentional

infliction of emotional distress claims.  Because this Court sits in diversity, the substantive law

of Michigan governs the claims in this case.  *See, e.g., Schare v. Mortgage Electronic*

*Registration Systems, Inc.,* 2012 WL 2031958 at *2 (E.D. Mich. 2012).

**A.     Negligence**

In Count III of Plaintiff's Amended Complaint, Plaintiff asserts a claim for negligence.

Defendants argue, *inter alia*, that they are entitled to summary judgment with respect to

Plaintiff's negligence claim because: (1) the Lease Agreement releases Defendants from liability

for negligent acts/omissions; and, alternatively, (2) because Plaintiff cannot establish causation.

The Court need not address Defendants' first argument because it agrees that Plaintiff has failed to sufficiently establish causation.

### 1.     Plaintiff Cannot Establish A Prima Facie Case Of Negligence

To establish a prima facie case of negligence under Michigan law, a plaintiff a must allege and prove four elements: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and (4) damages.  *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000).  Plaintiff cannot establish a prima facie case of negligence because she fails to satisfy the requirement of causation.

Proving causation requires proof of both cause in fact and proximate cause.  *Skinner v. Square D Co.*, 445 Mich. 153, 162-63 (1994).  "Cause in fact requires that the harmful result would not have come about but for the defendant's negligent conduct."  *Haliw v. City of Sterling Heights*, 464 Mich. 297, 310 (2001).  Proximate cause is that which, in a natural and continuous sequence, unbroken by new and independent causes, produces the injury.  *McMillian v. Vliet*, 422 Mich. 570, 576 (1985).  Proximate cause "normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences."  *Skinner*, 445 Mich. at 163.  "A plaintiff must adequately establish cause in fact in order for ... 'proximate cause' to become a relevant issue."  *Id.*

Here, Plaintiff appears to argue that she has established causation through circumstantial evidence.[1]  Proof of cause in fact may be established by circumstantial evidence, but such proof

_____

[1]  At oral argument, Plaintiff's counsel stated that he would apprise the Court and defense counsel of a case which he believed supported Plaintiff's causation argument.  To the extent that Plaintiff relies on *George v. Travelers Indem. Co.*, 81 Mich. App. 106 (1978), the Court finds Plaintiff's reliance misplaced.  *George* is clearly distinguishable from the instant action.  The court in *George* held the elements of arson may be established by circumstantial evidence of

"must facilitate reasonable inferences of causation, not mere speculation." *Id.* at 163-64. "[T]he plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* at 164-65. "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id.*

In the instant case, the harmful result about which Plaintiff complains is the fire that resulted in damages to her personal property. The negligence complained of is Defendants' alleged failure to attend to the ceiling fan after Plaintiff complained that she had been experiencing issues with it.

Plaintiff summarily asserts that, "[a]lthough the cause of the fire was classified as undetermined, a jury could conclude, through circumstantial evidence of photos, [the] origin and cause report and testimony, that the fire was caused by the bathroom exhaust fan or was electrical in nature." (Pl.'s Resp. at 11). In turn, Plaintiff appears to argue that the jury could also conclude that Defendants' failure to maintain/repair the fan is the but for cause of Plaintiff's injuries. (*Id*. at 12). Plaintiff concludes that "it remains a question of fact for the jury to determine what caused the fire and if it was due" to Defendants' breach of their duties. (*Id*. at 12-13).

Plaintiff's position is not persuasive. Even after drawing all reasonable inferences in favor of Plaintiff, the Court cannot infer that but for Defendant's alleged negligence (failure to respond to complaints regarding ceiling fan), a fire would not have occurred. Here, it is

---

motive and opportunity. Here, Defendants have not raised the issue of arson.

10

undisputed that the cause of the fire remains undetermined.  Accordingly, Plaintiff cannot establish that responding to Plaintiff's complaints would have resulted in the discovery of some antecedent to the fire that could have been remedied or avoided.

Moreover, the circumstantial evidence Plaintiff relies upon in support of her causation theory would impermissibly permit the jury to speculate as to cause.  For example, Plaintiff points to photos of her property after the fire as circumstantial evidence of causation.  But these photos merely establish the extent of the damage that resulted from the fire.  Plaintiff also points to fire department's Origin and Cause Report as circumstantial evidence of causation.  This Report, however, fails to bolster Plaintiff's position.  Although the Report concluded that the fire originated in the area of the ceiling fan, it also concluded that the fire was *undetermined* in nature and that it could therefore not rule out wiring and/or the ceiling fan as causes.  The Report's conclusion does nothing to narrow or identify the fire's cause and instead leaves the issue of causation open for speculation.  And finally, Plaintiff relies on her own testimony as circumstantial evidence of causation.  Plaintiff's testimony reveals that Plaintiff launched several complaints about her ceiling fan making noises and failing to turn on. This testimony establishes, at best, that it may be *possible* for the ceiling fan to have contributed to the fire in some way. However, a theory's mere possibility, without more, is insufficient to raise a genuine issue of fact as to causation.

Plaintiff has failed to satisfy the requirements of her prima facie case because she cannot establish that Defendants' alleged negligence caused the fire that resulted in damage to her personal property. Moreover, to the extent that Plaintiff relies on the theories of negligence *per se* and *res ipsa loquitur*, these theories fail to save her negligence claim for the reasons below.

11

**B.**     **Negligence *Per Se***[2]

  In Count I of Plaintiff's Amended Complaint, Plaintiff asserts a claim for negligence *per se*.  Plaintiff argues that a presumption of negligence arises here because Defendants violated Michigan Housing law requirements and local ordinances.  Plaintiff's arguments are meritless.

  Under the theory of negligence *per se*, if a plaintiff can establish that a defendant owed her a duty of care, evidence that the defendant violated a relevant statute or ordinance may constitute prima facie evidence that the defendant breached that duty.  *See Brooks v. Starr Commonwealth*, 2009 WL 1507320, at *2 (Mich. App. May 28, 2009) ("[O]nce a duty is found, the violation of the statute may demonstrate prima facie evidence of negligence").

  Whether a violation of a statute constitutes evidence of negligence depends on the statute's purpose and the class of persons it was designed to protect.  *Id.* (citing *Cipri v. Bellingham Frozen Foods, Inc.*, 235 Mich. App. 1, 16 (1999)).  Under Michigan law, the violation of a statute creates a rebuttable presumption of negligence if: (1) the purpose of the statute was intended to protect against the type of injury and harm incurred; (2) if the plaintiff was within the class of persons the statute intended to protect; and (3) the statutory violation was

---

[2] The Court notes that neither party addresses the fact that, under Michigan law, it appears  a plaintiff may not may not bring negligence *per se* as a stand-alone claim for relief. *See Abnet v. Coca-Cola Co.*, 786 F. Supp. 2d 1341, 1345 (W.D. Mich. 2011) ("The weight of Michigan authority supports Defendants' position that negligence per se is not an independent cause of action, but rather a burden-shifting mechanism within the theory of negligence.").  As such, in the case of negligence *per se*, "Plaintiff may offer evidence of statutory violations to establish a prima facie case under her claim of negligence ... but may not maintain a separate claim of negligence per se." *Id.*

Regardless of whether or not Plaintiff may bring her negligence *per se* claim as an independent cause of action, or just as evidence in support of negligence generally, the claim still fails for the reasons discussed in this Opinion & Order.

the proximate cause of the injuries incurred. *Klanseck v. Anderson Sales & Services, Inc*., 426

Mich. 78, 87 (1986).

First, Plaintiff asserts that Defendants violated M.C.L. § 554.139 by failing to fix the

ceiling fan. M.C.L. § 554.139 provides that, in every lease or license of residential premises, the

lessor or licensor covenants:

> (a) that the premises and all common areas are fit for the use intended by the
> parties.
>
> (b) to keep the premises in reasonable repair during the term of the lease or
> license, and to comply with the applicable health and safety laws of the state and
> of the local unit of government where the premises are located, except when the
> disrepair or violation of the applicable health or safety laws has been caused by
> the tenants wilful or irresponsible conduct or lack of conduct.

M.C.L. § 554.139(a), (b). Plaintiff's position here is without merit. Plaintiff has not presented

evidence raising a question of fact that the bathroom was unfit for its intended use. In fact,

Plaintiff's testimony reveals that although she experienced issues with her ceiling fan, she was

still able to use her bathroom in its intended manner. Importantly, "M.C.L. 554.139 does not

require perfect maintenance," it only requires reasonable maintenance. *Hadden v. McDermitt*

*Apartments, LLC*, 287 Mich. App. 124, 130 (2010). Thus, Defendants need not "maintain a

[common area] in an ideal condition or in the most accessible condition possible ...." *Allison v.*

*AEW Capital Mgt. LLP*, 481 Mich. 419, 430 (2008). Moreover, even if Plaintiff presented

sufficient evidence of a violation, there remains the issue of causation. Plaintiff has not

sufficiently established that Defendants' failure to maintain the ceiling fan was the cause of

Plaintiff's injury.

Next, Plaintiff argues that Defendants violated M.C.L. § 125.536, which provides:

When the owner of a dwelling regulated by this act permits unsafe, unsanitary or

13

> unhealthful conditions to exist unabated in any portion of the dwelling, whether a
> portion designated for the exclusive use and occupation of residents or a part of
> the common areas, where such condition exists in violation of this act, any
> occupant, after notice to the owner and a failure thereafter to make necessary
> corrections, shall have an action against the owner for such damages he has
> actually suffered as a consequences of the condition.

M.C.L. § 125.536(1). Plaintiff's argument is not persuasive. First, Plaintiff fails to point to any

evidence in the record which supports a finding that the issues she experienced with her ceiling

fan constituted "unsafe, unsanitary or unhealthful conditions," as is required under the Act. To

the extent that Plaintiff argues that the fire is evidence of an "unsafe, unsanitary or unhealthful

condition," this argument is circular. Moreover, Plaintiff has not produced evidence to establish

that she actually suffered any damages *as a consequence* of the condition. Put another way,

there is no evidence in the record that sufficiently establishes the cause of the fire.

Similarly, Plaintiff argues that Defendants violated M.C.L. § 125.471 by failing to repair

the ceiling fan or electrical wiring. M.C.L. § 125.471 provides:

> Every dwelling and all the parts thereof including plumbing, heating, ventilating
> and electrical wiring shall be kept in good repair by the owner. The roof shall be
> so maintained as not to leak and the train water shall be drained and conveyed
> therefrom through proper conduits into the sewerage system in accordance with
> plumbing regulations so as to avoid dampness in the walls and ceilings and
> insanitary conditions.

M.C.L. § 125.471. Plaintiff's argument fails for a number of reasons. First, to the extent that

Plaintiff argues that Defendants failed to keep "electrical wiring" in good repair, Plaintiff's

argument is misplaced. Nothing in the record establishes that Plaintiff launched any complaints

about electrical wiring or that the wiring was defective and in need of repair.

Second, to the extent that Plaintiff argues that Defendants failed to keep the ceiling fan in

good repair, Plaintiff fails to cite a single case that has held that a landlord's failure to repair a

14

bathroom ceiling fan amounts to a violation of M.C.L. § 125.471.  Morever, even if § 125.471

applied here, Plaintiff still has not established that Defendants' failure to attend to the ceiling fan

proximately caused the fire.  This is fatal and distinguishes the instant case from *Morningstar v.*

*Strich*, 326 Mich. 541 (1950).  In *Morningstar*, the plaintiff was severely scalded when a valve

came off of a radiator.  Six weeks prior to the accident, the plaintiff's mother had called the

landlord to complain about the condition of the heating system, particularly the valves.

*Morningstar*, 326, Mich. at 542.  Based upon the evidence in the record, the court was able to

conclude that the accident and the plaintiff's injuries resulted from the worn-out and stripped

condition of the radiator's valve threads.  *Id.* at 544.  Thus, the court held that the defendant's

failure to take the necessary remedial steps to maintain the heating system in good repair was the

proximate cause of the accident.  *Id.* 545.  Here, aside from Plaintiff's prior complaints, there is

nothing in the record establishing proximate causation.

Plaintiff also argues that Defendants violated M.C.L. § 125.538, which prohibits the

maintenance of dangerous buildings and states specifically that, "[i]t is unlawful for any owner

or agent to keep or maintain any dwelling or part thereof which is a dangerous building...."

M.C.L. § 125.538.  Plaintiff asserts that the condition of her apartment meets two of the

definitions of a dangerous building as defined in M.C.L. § 125.139:

> (f) the building, structure, or part of the building is manifestly unsafe for the
> purpose for which it is used.
>
> * * * *
>
> (h) a building or structure is used or intended to be used for dwelling purposes,
> including the adjoining grounds, because of dilapidation, decay, damage, faulty
> construction or arrangement, or for other reason is unsanitary or unfit for human
> habitation ... or is likely to injure the health, safety, or general welfare of people
> living in the dwelling.

15

M.C.L. § 125.139(f), (h).  In making this argument, Plaintiff simply contends that "if the building was safe, a fire would not have occurred."  (Pl.'s Resp. at 12).  Plaintiff's argument is without merit.  First, Plaintiff's argument is circular.  Additionally, Plaintiff has not pointed to any evidence in the record sufficient to establish that the ceiling fan in the bathroom caused her apartment building to be manifestly unsafe under M.C.L. 125.539(f) or *likely* to injure health, safety, or general welfare of the people living there under M.C.L. 125.539(h).

Plaintiff also argues that Defendants violated City of Pontiac Ordinances 58-46 and 58-47.  Both of Plaintiff's arguments are without merit.  Ordinance 58-46 requires that "all persons who own, manage, lease, rent, or occupy any premises shall be equally responsible for keeping the premises in a clean and habitable condition...."  PONTIAC, MI., MUNICIPAL CODE & ZONING ORDINANCE ch. 58, art. II, § 46 (2017).  Similarly, Ordinance 58-47 requires the owner or landlord of every building to keep the building "in a habitable condition to prevent the premises from becoming a nuisance...."  *Id.* at art. II, § 47.  Here, Plaintiff has not produced any evidence establishing that Defendants' failed to keep premises in a habitable condition.

Finally, Plaintiff summarily asserts that Defendants violated the United States Public Health and Welfare Act, which aids "low-income families in obtaining a decent place to live." 42 U.S.C. § 1437f.  Plaintiff's argument is this: "the apartment was clearly not a 'decent place to live,' as evidenced by the fact that a fire occurred without the smoke alarms alerting any tenants."  (Pl.'s Resp. at 12).  Plaintiff mischaracterizes the evidence as it relates to the smoke detectors.  Because Plaintiff was not present at the time the fire started, she cannot know whether the smoke detectors initially sounded or not.  Moreover, the Origin & Cause Report notes that the smoke detectors in the apartment were tested by the fire department and that upon testing,

16

they activated.  Notably, the smoke detector in the area of the bedroom with the master bathroom
was melted upon the fire department's arrival.  Thus, there is no evidence that the smoke
detectors failed to sound when the fire began.

**C.**     ***Res Ipsa Loquitur***[3]

In Count IV of Plaintiff's Amended Complaint, Plaintiff asserts a claim for *res ipsa
loquitur.*  "The major purpose of the doctrine of res ipsa loquitur is to create at least an inference
of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act."
*Woodward v. Custer*, 473 Mich. 1, 7 (2005) (quoting *Jones v. Porretta*, 428 Mich. 132, 150
(1987)) (internal quotation marks omitted).  The doctrine permits a jury to infer negligence if the
following conditions are met:

> (1) the event must be of a kind which ordinarily does not occur in the absence of
> someone's negligence;
>
> (2) it must be caused by an agency or instrumentality within the exclusive control of the
> defendant;
>
> (3) it must not have been due to any voluntary action or contribution on the part of the
> plaintiff; and
>
> (4) evidence of the true explanation of the event must be more readily accessible to the
> defendant than to the plaintiff.

---

[3] The Court notes that neither party addresses the fact that, under Michigan law, it
appears  a plaintiff may not may not bring *res ipsa loquitur* a stand-alone claim for relief.  *See
Curley v. Macy's Retail Holdings, Inc.*, 2011 WL 4088750, at *3 (E.D. Mich. Sept. 14, 2011)
("After reviewing Michigan's common law, the Court finds that Plaintiffs may not plead a
separate cause of action under *res ipsa loquitur*.").  As such, in the case of *res ipsa loquitur*,
"Plaintiff may rely on the doctrine of *res ipsa loquitur* to prove [her] claims of ... negligence.
Plaintiff[], however, may not plead the doctrine of *res ipsa loquitur* as a separate cause of action
in this case."  *Id.*

Regardless of whether or not Plaintiff may bring her *res ipsa loquitur* claim as an independent
cause of action, the claim still fails for the reasons discussed in this Opinion & Order.

*Id.* (quoting *Jones*, 428 Mich. at 150-51) (internal quotation marks and brackets omitted).  The Court concludes that Plaintiff has failed to satisfy the doctrine's second condition.  As such, Plaintiff's *res ipsa loquitur* claim fails.

To satisfy the second condition of *res ipsa loquitur*, Plaintiff must establish that the instrumentality that caused the fire had been in the exclusive control of Defendants.  Plaintiff contends that this requirement has been satisfied.  Specifically, Plaintiff argues that under the terms of the Lease Agreement, Plaintiff was not permitted to repair or replace the ceiling fan or electrical wiring.  As such, Plaintiff concludes that she had no control over the ceiling fan or the wiring and that these instrumentalities were in the exclusive control of Defendants.

Plaintiff's argument misses the mark.  The fact that Plaintiff was contractually prohibited from repairing or replacing the ceiling fan and/or electrical wires has no bearing on the fact that the ceiling fan was located within Plaintiff's own bathroom.  There can be no real dispute that Plaintiff had access to the ceiling fan.  Thus, Defendants did not hold exclusive control over the instrumentality that Plaintiff alleges caused the fire.

Additionally, even assuming that Plaintiff met the requirements of the *res ipsa loquitur doctrine*, Plaintiff still cannot rely on the doctrine to presume causation.  Simply put, *res ipsa loquitur* only "satisfies the breach of duty element, not the causation element."  *Irwin v. Odyssey Contracting Corp.*, 61 Fed. App'x 150, 155 (6th Cir. 2003) (applying the *res ipsa loquitur* doctrine under Michigan law).

### D.     Gross Negligence

Count II of Plaintiff's Amended Complaint asserts a claim for gross negligence.  In order to establish a claim for gross negligence, a plaintiff must establish that the defendant engaged in

18

"conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  Xu v. Gay, 257 Mich. App. 263, 269 (2003) (internal citations omitted).  "Evidence of ordinary negligence is insufficient to create a material question of fact regarding the existence of gross negligence."  *Woodman v. Kera, LLC*, 280 Mich. App. 125, 152 (2008).  Gross negligence "has been characterized as a willful disregard of safety measures and a singular disregard for substantial risks."  *Oliver v. Smith*, 290 Mich. App. 678, 685 (2010).

Here, Plaintiff argues that Defendants' failure "to fix known problems with the bathroom fan before an event such as this fire occurred" amounts to gross negligence.  (Pl.'s Resp. at 13).  Plaintiff's claim fails for the same reason her negligence claim fails: she has not sufficiently established that the ceiling fan caused the fire.  Moreover, Defendants' failure to respond to complaints regarding a ceiling fan making loud noises and occasionally turning off is not sufficient to establish gross negligence.  These facts, without more, do not permit a reasonable juror to conclude that Defendants exhibited a substantial lack of concern for whether injury would result.

## E.        Breach of Lease Agreement

Count V of Plaintiff's Amended Complaint asserts a claim for breach of the Lease Agreement.  In a single paragraph, Plaintiff argues that Defendants breached the governing Lease Agreement by failing to maintain the premises in good repair and tenantable condition and by failing to make all repairs necessary to keep the premises in a fit and habitable condition.  (Pl.'s Resp. at 19).  Plaintiff concludes that, "if the premises were 'in good repair and tenantable condition,' a fire would not have occurred."  (*Id*.).

Plaintiff's argument is circular.  Moreover, Plaintiff has not produced evidence to

19

establish that Defendants failed to keep her apartment in a fit and habitable condition while she lived there.  The evidence establishes that Plaintiff was still able to use her apartment and her bathroom despite the issues she experienced with the ceiling fan.

**F.      Intentional Infliction of Emotional Distress**

Count VI of Plaintiff's Amended Complaint asserts a claim for intentional infliction of emotional distress.  Under Michigan law, the elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.  *Smith v. Calvary Christian Church*, 233 Mich. App. 96, 113 (1998).  In ruling on such a claim, it is initially for the trial court to determine whether the defendant's conduct reasonably may be regarded as so extreme and outrageous to permit recovery.  *Webster v. United Auto Workers, Local 51*, 394 F.3d 436, 442 (6th Cir. 2005). If reasonable minds may differ, however, "it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct is sufficiently extreme and outrageous to result in liability." *Id.*

"The threshold for showing extreme and outrageous conduct is high.  No cause of action will necessarily lie even where a defendant acts with tortious or even criminal intent." *VanVorous v. Burmeister*, 262 Mich. App. 467, 481 (2004).  "Rather, liability is imposed only where 'the conduct had been so outrageous in character, and so extreme in degree, as to go beyond all possible bonds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* (quoting *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 603 (1985)).

The Court concludes that Plaintiff has failed to establish a claim for intentional infliction

20

of emotional distress because Defendants' alleged conduct falls far short of extreme and outrageous. Plaintiff identifies the following as evidence of extreme and outrageous conduct: (1) allowing dangerous conditions to exist in the apartment that could have taken Plaintiff's life; (2) failing to take complaints about the bathroom ceiling fan; (3) insisting that Plaintiff sign a release relieving Defendants of their liability before they would provide her another unit; (4) promising to clean Plaintiff's damaged property and then reneging on that promise; (5) demanding Plaintiff remove her property from the apartment and then denying Plaintiff access; (6) removing Plaintiff's items from her apartment; (7) ensuring Plaintiff would not be present when Defendants removed items from her apartment by failing to notify her; (8) implying that Plaintiff's items should be undervalued because she receives public assistance; and (9) implying that liability would not be disputed when they repaired the unit and removed or destroyed evidence.

First, a number of these allegations are not supported by the record. For example, the cause of the fire has not been determined so it is not true that Defendants permitted "dangerous conditions" to exist in the apartment. Moreover, nothing in the record establishes that Defendants were "ensuring" Plaintiff would not be present when items were removed.

Second, Plaintiff's remaining allegations, even if true, would not permit a reasonable juror to conclude that Defendants' alleged conduct is extreme and outrageous. It was reasonable for Defendants to have changed the locks to the apartment after the fire. Plaintiff's own testimony confirms that she was told that the apartment constituted a hazard. That Plaintiff was not allowed to reenter the apartment on her own is neither outrageous nor extreme. Moreover, the email correspondence between Defendants and Plaintiff's counsel confirm that the parties

21

were engaged in ongoing communications regarding the retrieval and cleaning of Plaintiff's personal property. Nothing in these emails illustrates extreme or outrageous conduct on the part of Defendants. To the extent that Defendants reneged on their promise to clean Plaintiff's property, this does not constitute outrageous conduct.

## G.    Plaintiff's Request For Spoilation Sanctions

In her response, Plaintiff contends that spoilation sanctions are appropriate here because "Defendants, wanting to get the unit repaired so they would not continue to lose money on an unrented unit, removed the bathroom fan and electrical wiring, but apparently, failed to preserve them, despite Plaintiff's counsel's request." (Pl.'s Resp. at 23). Plaintiff's argument lacks merit.

"[I]t is within a district court's inherent power to exercise broad discretion in imposing sanctions based on spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 653 (6th Cir. 2009). A party seeking spoilation sanctions based on the destruction of evidence must establish that: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010).

### 1.    Obligation to Preserve

The Sixth Circuit has explained that "[a]n obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation, but, if there was no notice of pending litigation, the destruction of evidence does not point to ... intentional destruction." *Alomari v. Ohio Dep't of Pub. Safety*, 626 Fed. App'x. 558, 569 (6th Cir. 2015).

22

Here, it is not clear that Defendants duty to preserve the bathroom ceiling fan was ever triggered. Nothing in the email correspondence between Plaintiff's counsel and Defendants would have put Defendants on notice that Plaintiff intended to bring a negligence suit against Defendants and that the bathroom ceiling fan was relevant to the suit. The communications between the parties centered primarily on the possible restoration and/or value of Plaintiff's personal property.

Moreover, to the extent that Defendants were obligated to preserve the bathroom ceiling fan/electrical wires, the Court agrees with Defendants that such a duty does not continue indefinitely. The Court finds the Second Circuit's decision in *Allstate Insurance Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450 (2d Cir. 2007) instructive. *Hamilton Beach* involved an allegedly defective coffee maker that caused a fire to the home of Allstate's insured. The Second Circuit reaffirmed the notion that a party's obligation to preserve evidence does not last indefinitely. The Second Circuit denied spoliation sanctions after concluding that: (1) the defendants were provided a full opportunity to inspect the items; (2) the defendants did not request that Plaintiff's preserve the evidence after inspection; and (3) the defendants disclaimed any interest in the evidence.

Here, three things prove to be fatal to Plaintiff's request for sanctions. First, Plaintiff had an opportunity to inspect the evidence allegedly destroyed by Defendants. In fact, Plaintiff has attached as exhibits to her response photographs of the damaged bathroom ceiling fan/electrical wiring and a video of the unit (including the ceiling fan) after the fire but prior to any removal or restoration of property. *See e.g., Thiele v. Oddy's Auto and Marine, Inc.*, 906 F. Supp. 158, 162-63 (W.D.N.Y. 1995) (denying spoliation sanction requested by a primary defendant who had

inspected the evidence before destroying it, while granting spoilation sanction in favor of third-party defendant who was not afforded similar opportunity to inspect); *Baliotis v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994) ("The scope of the duty to preserve evidence is not boundless," but it requires, at minimum, that the defendant be provided an opportunity for inspection)) (internal quotation marks omitted).  .

Second, in none of the emails between Plaintiff's counsel and Defendants did counsel express an interest in the bathroom ceiling fan/electrical wiring.  Nor did Plaintiff or Plaintiff's counsel ever request that such items be preserved.  Instead, counsel's focus was almost exclusively related *to* Plaintiff's access to the apartment, the preservation/restoration of Plaintiff's personal property and the replacement costs of Plaintiff's unsalvageable property.

Third, Plaintiff's counsel effectively disclaimed any interest in the ceiling fan on December 13, 2013.  Specifically, Plaintiff's counsel's email to Defendants confirmed that the "remaining items are available for [Defendants] to inspect, and the unit can now be restored." (Doc. # 34).  For these reasons, the Court shall DENY Plaintiff's request for sanctions.

## CONCLUSION

For the foregoing reasons, the Court shall **GRANT** Defendants' Motion for Summary Judgment and **DENY** Plaintiff's request for spoilation sanctions.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  February 16, 2017

24

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Anissa Stewart,

      Plaintiff,

                                            Case No. 16-10434

v.

                                            Hon. Sean F. Cox

Michigan Pontiac, LLC, et. al.,

      Defendants.

_____/

PROOF OF SERVICE

      I hereby certify that a copy of the foregoing document was served upon counsel of record

on February 16, 2017, by electronic and/or ordinary mail.

                                     s/Jennifer McCoy
                                     Case Manager